**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
APR 1 0 2024
AT_____ O'CLOCK
John M. Domurad, Clerk - Syracuse

---

Shane T. Stokes, Sr., (prose), and
Susan Johnson (Mother) ,

Plaintiff(s),

v.

Chief James Slayton; Depty Roger Anthony;
Lt. Matthew Androsko; each as an Individual
and in their official Capacities as an
Auburn City Police Officers, Cayuga County,
ex al....., Defendant(s).

---

( "Caption continue on next page")....

**COMPLAINT**
(Pro Se Prisoner)

**Case No.** _____
(Assigned by Clerk's
Office upon filing)

**Jury Demand**
xx Yes
☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's social security number, taxpayer identification number, or birth date; the name of a person known to be a minor; or a financial account number. A filing may include *only*: the last four digits of a social security number or taxpayer-identification number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. *See* Fed. R. Civ. P. 5.2.

---

## LEGAL BASIS FOR COMPLAINT

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution and laws of the United States. Indicate below the federal basis for your claims.

- xx 42 U.S.C. § 1983 (state, county, or municpal defendants)
- ☐ *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)
- ☐ Other (please specify) _____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Mr. Shane T. Stokes, Sr , |
| All other names by which you have been known: | ( Suzan C. Johnson, Plaintiff )* Plaintiffs are residents of the City of Auburn |
| ID Number | 22b4575 |
| Current Institution | Cape Vincent Correctional Facility |
| Address | Route 12 E, P.O. Box 739 . |
| | Cape Vincent    N.Y.    13618-0599 |
| | *City*        *State*    *Zip Code* |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant (s)

| | |
|---|---|
| Name | (James Slayton and Roger Anthony.) |
| Job or Title *(if known)* | Chief and Depty of: Auburn City Police Department |
| Shield Number | N/A |
| Employer | Auburn City Police Department |
| Address | 46 North Street |
| | Auburn        N.Y.      13201 |
| | *City*        *State*    *Zip Code* |

[XX] Individual capacity  [XX] Official capacity

Defendant (s)

| | |
|---|---|
| Name | Lieutenant Matthew Androsko |
| Job or Title *(if known)* | Lieutenant |
| Shield Number | N/A |
| Employer | Auburn City Police Department |
| Address | 46 North Street |
| | Auburn        N.Y.      13201 |
| | *City*        *State*    *Zip Code* |

[xx] Individual capacity  [xx] Official capacity

*) Plaintiff Stokes shall provide his mothers' address to the Court shortly.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant

    Name                          Nathan Gage

    Job or Title *(if known)*      Police Officer

    Shield Number            #0656

    Employer                Auburn City Police Department

    Address                 46 North Street

                                  Auburn           N.Y.      13201

                                    *City*            *State*       *Zip Code*

                           [XX] Individual capacity     [XX] Official capacity

Defendant

    Name                          John Doe No# 1

    Job or Title *(if known)*      Police Officer

    Shield Number            N/A

    Employer                Auburn City Police Department

    Address                 46 North Street

                                    Auburn           N.Y.      13201

                                    *City*            *State*       *Zip Code*

                           [XX] Individual capacity     [XX] Official capacity

Defendant (s)

    Name                          John Does No# 2, 3 and 4

    Job or Title *(if known)*      Police Officers

    Shield Number            N/A

    Employer                Auburn City Police Department

    Address                 46 North Street

                                    Auburn           N.Y.      13201

                                    *City*            *State*       *Zip Code*

                           [XX] Individual capacity     [XX] Official capacity

Defendant (s)

    Name                          Jane Doe and John Doe

    Job or Title *(if known)*      Auburn Community Hospital "Nurse"

    Shield Number            N/A

    Employer                Auburn Community Hospital

    Address                 17 Lansing Street

                                    Auburn           N.Y.      13201

                                    *City*            *State*       *Zip Code*

                           [XX] Individual capacity     [XX] Official capacity

At all times relevant to theis complaint, all defendant(s) acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff, and all defendant(s) acted under color of state law.

Page 3 of 3

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

[  ] Federal officials (a *Bivens* claim)

[XX] State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

    See, Plaintiffs statement of facts

III.   **Prisoner Status**

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

[  ] Pretrial detainee

[  ] Civilly committed detainee

[  ] Immigration detainee

[XX] Convicted and sentenced state prisoner/ (based upon an illegal plea & sentence).

[  ] Convicted and sentenced federal prisoner

[  ] Other *(explain)* _____

IV.   **Statement of Claim**

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.

    Please see Plaintiff's complaint at pages ( 13 ) through ( 38 ), attached
    heretowith.

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.

    N/A

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

Febuary 23rd, 2021, Cayuga County, city of Auburn.

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Please read plaintiff Stokes's complaint at pages (13 ) through ( 38 ), attached heretowith and apart hereof.

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Please read plaintiff Stokes complaint at pages ( 16 ) through ( 38 ), attached heretowith and apart hereof.

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Please see Plaintiff Stokes's complaint  at pages ( 38 ) through ( *** ), attached  heretowith and apart hereof.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☐ Yes

☒ No !

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

(" Plaintiff Stokes have exhausted his required notice of intentions of his claims, which are attached heretowith at pages ( 01 ) through ( 15 ), of plaintiff's Exh. (A)  ")

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☐ Yes          N/A

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes          N/A

☐ No

☐ Do not know

If yes, which claim(s)?

page 6 of 6

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☒ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☒ No

E.    If you did file a grievance:    This is involving an outside incident.

1.    Where did you file the grievance?

Plaintiff Stokes did file the rquired said "Notice of Intention(s)", regarding said instant claims. See, plaintiff Stokes complaint at: Exh. (A), at pages ( 1 ) through (15 ).

2.    What did you claim in your grievance?

See, plaintiff Stokes's Exh.(A), at (Exhibit) pages ( 1 ) through ( 15 ), attached hereto and apart hereof.

3.    What was the result, if any?

Pending  a determination before this Court at present.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

N/A

page 7 of 7

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

N/A at this point to plaintiff Stokes's legal position , because plaintiff actually filed his notice of intention to sue said defendants upon which he has already been deposed by said defendants attorney which said notice of intention is attached here.

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

N/A at this point of plaintiff Stokes's legal position. However, plaintiff did attached hereto his notice of intention to file a claim against said defendants.

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

See, plaintiff Stokes's Exh.(A), at complaint pages ( 01 ) through ( 15 ), attached hereto and apart hereof.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No !

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_____

3. . Docket or index number

_____

4.    Name of Judge assigned to your case  .

_____

5.    Approximate date of filing lawsuit

_____

6.    Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition. _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

N/A

page  9  of  9 .

☐ Yes

☒XX No !

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
      Plaintiff(s) _____
      Defendant(s) _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

      _____

3.    Docket or index number

      _____

4.    Name of Judge assigned to your case

      _____

5.    Approximate date of filing lawsuit

      _____

6.    Is the case still pending?

      ☐ Yes

      ☐ No

      If no, give the approximate date of disposition _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

      _____

page 10 of 10

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *April 4th 2024*

| | |
|---|---|
| Signature of Plaintiff | *Mr. Shane T. Stokes, SR* |
| Printed Name of Plaintiff | Mr. Shane T. Stokes, SR., |
| Prison Identification # | 22b4575 |
| Prison Address | Cape Vincent Correctional Facility, Rte.12E, PO Bx.739, |
| | Cape Vincent,    New York    13618-0599 |
| | *City*        *State*    *Zip Code* |

I, Plaintiff Shane T. Stokes, so declares under penalties of perjury that the foregoing are true and correct.

Dated: *4/4/24* .

*Mr. Shane T. Stokes, SR*

Plaintiff's Signature

UNITED    STATES    DISTRICT    COURT    FOR    THE

NORTHERN DISTRICT OF NEW YORK

---

Shane T. Stokes Sr.,    (prose), ex al.,

Plaintiff(s),

V.

City of Auburn, James Slayton, Chief of
 Auburn Police Department, ex al..

COMPLAINT

(Pro Se Prisoner)

Case No. _____
(Assigned by Clerk's
 Office upon filing)

JURY DEMANDED

---

PLAINTIFF SHANE T. STOKES SR., STATEMENT OF FACTS

PAGES ( 13 )   THROUGH ( 41 )

PLAINTIFF SHANE T. STOKES SR., TABLE OF CONTENT

Plaintiff Shane T. Stokes Sr., and plaintiff Susan C. Johnson ("collectively plaintiffs") table of content reads as follows respectively:

COUNT I

(Unlawful Seizure, Unlawful Arrest and Unlawful Excessive Force)

COUNT II

( Assault and Battery )

COUNT III

( False Arrest, False Imprisonment and Malicious Prosecution )

COUNT IV

( Failure To Intervene )

COUNT V

( Municipality Claim )

COUNT VI

( Eigth and Fourteenth Amendment and Deliberate Indifference incorporated with Negligence State Claims and Failure To Intervene )

COUNT VII

( Infliction of Emotional Distress )

Count VIII

( State Law Negligence Claim )

COUNT IX

( 42 U.S.C § 12132, Title II of the ADA and Section of the Rehabilitation Act )

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

Shane  T. Stokes, Sr., (prose),  and
Susan Johnson  (Mother)         ,

Plaintiff(s),

v.

Chief James Slayton; Depty Roger Anthony;
Lt. Matthew Androsko; each as an Individual
and in their official Capacities as an
Auburn City Police Officers, Cayuga County,
ex al....;
Defendant(s).

**COMPLAINT**
(Pro Se Prisoner)

Case No. _____
(Assigned by Clerk's
Office upon filing)

**Jury Demand**
xx Yes
□  No

---

( "Caption continue on next page")....

> ### NOTICE
> The public can access electronic court files. For privacy and security reasons,
> papers filed with the court should therefore *not* contain: an individual's social
> security number, taxpayer identification number, or birth date; the name of a
> person known to be a minor; or a financial account number. A filing may
> include *only*: the last four digits of a social security number or taxpayer-
> identification number; the year of an individual's birth; a minor's initials; and the
> last four digits of a financial account number. *See* Fed. R. Civ. P. 5.2.

## I.   LEGAL BASIS FOR COMPLAINT

This is a civil action seeking relief and/or damages to defend and protect the
rights guaranteed by the Constitution and laws of the United States. Indicate
below the federal basis for your claims.

    xx  42 U.S.C. § 1983 (state, county, or municipal defendants)
    □  *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)
       (federal defendants)
    □  Other (please specify) _____

Plaintiff Shane T. Stokes Sr., (prose);

Complaint For Violation of Civil Rights - Caption from page 1;

United States District Court for Northern District of New York.


Shane T. Stokes Sr., Individual and as proxy Administrator of the Estate of one: Susan C. Johnson, plaintiff and plaintiff Stokes is also the legal guadian for his mother one plaintiff Susan C. Johnson, ("collectively plaintiff"),

V.

Nathen Gage as an Individual and in his official capacity as Auburn City Police Officer; John Doe: 1,2,3, and 4, Individuals and in their official capacity as Auburn City Police officers; Jane Doe#1 and John Doe#2, nurses and/or paramedics of Auburn Community Hospital, Cayuga County, City of Auburn, Auburn Community Hospital, defendants.

---

## PLAINTIFF SHANE T. STOKES SR., CIVIL COMPLAINT

1). The Plaintiff Stokes and on behalf of plaintiff Susan C. Johnson, his mother do respectfully moves this Court for a 42 U.S.C. § 1983 as follows:

### INTRODUCTION

2). Also, the plaintiff Stokes asserts that, said present civil complaint herein is against the above so named defendants and describing their action under 42 U.S.C § 1983 and raising supplemental state-law claims concerning the actions of the defendants as well herein so stated. Thus, the plaintiff Stokes does brings before this court [9], causes of actions against each of these defendants so named and listed as a result of their actions rendered against each plaintiffs so named and causing them harm as detailed and described herein.

### JURISDICTION

3). Plaintiff Stokes does also invokes jurisdiction before this Court pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331(a)(3); 1343(a)(4), and 1367(a), also this action seeks to obtain from the deprivation, under color of state law, of rights secured by Acts of Congress providing for equal rights of persons and citizens within the jurisdiction of the United States.

PLAINTIFF SHANE T. STOKES STATEMENT OF FACTS

4). On Febuary 22, 2021, plaintiff Stokes did receive a call while at work from the defendant Jane Doe nurse, ( i.e., who plaintiff will refer to "KAREN" from the motion picture 'KAREN'); that his mother had been admitted to the Auburn Community Hospital. This call was made to plaintiff Stokes around about [10:30 pm], on this day in question.

5). Plaintiff Stokes was gainfully at: [ BSC Company, a company that make Keyfibes for cars ]. Plaintiff Stokes had worked the [ 3pm to 11 pm ] shifts for this company. After plaintiff Stokes had gotten work night. He had went straight home and settled in to relax at home for quit night to himself.

6). Then during the early morning hours of: (1:31 a.m.), on Febuary 23, 2021, plaintiff Stokes once again received a call from 'KAREN" Jane Doe nurse/paramedic defendant. She was harshly speaking to plaintiff over the phone as from her initial phone she had made to plaintiff Stokes about his mother who was in their care. She did with a harsh tone tell plaintiff that, "he would have to make it his business to come to the hospital and pick up his mother, because she was being immediately discharged." Please bare in mind this incident occurred during COVID--19.

7). SHOCKED! Plaintiff Stokes did ask KAREN, Jane Doe defendant politely, "what was the reason that she wanted to [dis]charge his mother from the hospital especially during COVID -19?" Jane Doe jsut replied to plaintiff Stokes that, "it's just best that, "he get down here and pick up your mother, because her bed was needed!" Also, plaintiff did express to Jane Doe that, "he did not have a car to ride out ther to pick up his mother." Plaintiff Stokes further asked Jane Doe could he come out to the hospital and pick his mother up abit later in the morning?" She said, "NO!" Therefore, plaintiff did attempt to make the necessary calls for transportation out to the said hospital to pick up his mother. All to no avail. At this time it was around [1:47 a.m.], 2/23/2021.

Plaintiff is certain that, "KAREN", Jane Doe defendant knew or should have known that his mother had repeated ["seizures"] and suffered from ["dementia"] and had many medical trips in the past to the hospital. In the past medical staff there has always attended to plaintiff mother needs.

Plaintiff did call Jane Doe back at the hospital. He did explain to her that, he could not get a ride out to the hospital at that early time of the day. And that, he himself would have to walk too the hospital and pick up his mother. Plaintiff Stokes also informed "KAREN" Jane Doe defendant that said walk would consist of about 25 min or abit more walk from where plaintiff had resided. Moreover, it was very, very cold out! At this time is was around [2:14 a.m], 2/23/2021.

8). When plaintiff Stokes did finally reach the Auburn Community Hospital; he went right to the receiptionist window to inquire about the status of his mother. He had alerted staff there that he was there to pick up his mother who was being "kicked out" the hospital. Plaintiff mother was being picked up from the emergency room. Plaintiff had asked staff just why was his mother being kicked out from receiving proper medical treatment? This time however, "KAREN", Jane Doe defendant happen to be on duty this day of Febuary 22 and 23, 2021, too address plaintiff mothers' medical needs. Yet, Jane Doe approach to plaintiff Stokes's mother medical needs and conditions was contravention of medical best practices. At this time it was around [2:35 a.m.], 2/23/2021.

9). Later plaintiff Stokes mother was brought out to him assisted by medical staff. She was brought down to him in a wheelchair. Additionally, plaintiff's mother was very im- properly dressed. She was brought out before plaintiff wearing only a night gown, one sock, and covered in a hospital blanket. Plaintiff immediately brought this to the de- fendant Jane Doe attention, "why was his mother improperly dressed and brought down to the emergency room ( hereafter ER )?" This was done prior to plaintiff's mother being discharged from the hospital via demand by the defendant Jane Doe. Defendant Jane Doe did respond to plaintiff that, "it was COVID and we need the bed as i told you on the phone and beside i don't have too keep explaining myself  to you." Plaintiff Stokes did not intend to get into a argument with defendant Jane Doe "KAREN", so plaintiff let it go.

10). Plaintiff Stokes proceeded to dress his mother some 'extra' cloths; he had brought for his mother to change into which came from home. As he continued to get his mother dress; Then when plaintiff Stokes tossed the thin hospital blanket his mother had had wrapped around her; onto the bench near by in the ER area. No one was present at all in the ER's seating area at this time due to COVID-19.

11). Thus, while continuing to assist his mother at getting dressed there in the ER. Plaintiff Stokes did happen to notice that defendant Jane Doe "KAREN" was sorta 'rushing' through the doors that were adjucent to the receiptionist booth window. She had walked right up to plaintiff Stokes in a very aggressive manner and yelling at plaintiff. She said, "now that's not the type of conduct she type of conduct; she does tolerate by you or anyone." SHOCKED! Plaintiff Stokes responded, "what type of conduct are you talking about?" Jane Doe had approached plaintiff pretty close up in plaintiff face.  Plaintiff

did further respond to Jane Doe "KAREN", "to please back away from so close up in his face!"

12). Plaintiff Stokes was desparately trying to ignore "KARREN", as well aviod arguing with her while plaintiff was rushing to get his mother dressed to take her home* However, Jane Doe just continued on ranting and raving at plaintiff. She stood closer than the required 6' COVID restrictions glaring in plaintiffs' face. She was consistly yelling at plaintiff and causing a commotion for no reason which plaintiff did find to be very weird. She was yelling and carring on right in front of plaintiff's mother causing her to become very up set and nervous! Moreover, defendant Jane Doe did attract the attention of defendant John Doe 'nurse' and three other medical staff members. Whom all had came over to plaintiff to investigate just why the defendant Jane Doe was yelling and shouting. At this point the defendant Jane Doe nurse negative behavior was preventing plaintiff Stokes from dressing and aiding his mother and taking her home accordingly.

13). Now, defendant Johne Doe nurse did approach plaintiff while he was still in the ER. This defendant John Doe did directly ask the plaintiff Stokes, "what was the problem and what was going on?" Plaintiff responded that, "all he was doing was trying to get his mother dress to go home and that Jane Doe nurse was for no apparent justifiable reason. She was preventing plaintiff and his mother from properly exiting the (ER)." At this time, defendant Jane Doe was standing exactly next to John Doe nurse; when plaintiff was responding back to John Doe nurse. Plaintiff Stokes best describes defendant Jane Doe's behavior and/or actions to be very, very much like: "KAREN" weird and strange.

14). Before defendant John Doe nurse could respond back to plaintiff after he had answered John Doe question put to him. Defendant Jane Doe once again, [t]his time; she began yelling loud over John Doe. She was pointing at plaintiff saying, "I WANT HIM TO LEAVE NOW, I WANT HIM TO GET OUT AND FOR HIM TO TAKE HIS MOTHER WITH HIM!!"

15). Plaintiff Stokes did continue to address John Doe defendant irregardless; defendant Jane Doe was being overly eractic to deal with. Plaintiff had let John Doe know that, " Jane Doe knew full well that he was his mother 'proxy' and thet his mother also suffered from "cronic seizure and dementia, which were on record in the hospital and now Jane Doe was shockingly yelling and screaming at plaintiff out of the blue. Jane Doe also knew that plaintiff had to walk from his house to the hospital in order pick up his mother. Plaintiff place of resident was far away from the hospital.

---

*) Plaintiff Stokes humbly ask Your Honor to born in mind that it was extremely cold out side and during the time of COVID-19.

16). Plaintiff Stokes seeing how weird and strange defendant Jane Doe was carrying on. He was putting a 'rush' on getting his mother dress in the ER area. Plaintiff could not actually believe that Jane Doe was tripping out over him just tossing a hospital blanket down on the bench which was hanging off the bench onto the floor abit. Anyway, plaintiff and his mother was finally headed toward the ER exit door. Plaintiff was also embracing holding on to his mother as he lead her out of the hospital ER area. What happen next caught plaintiff Stokes totally off guard and was [un]expected and [un]professional on the part of defendant Jane Doe.

17)). Before the plaintiff and his mother could actually make it out of the ER area; near the exit door. Defendant Jane Doe came dashing directly in front of him and his mother pathway as they were about to leave the ER area. Defendant Jane Doe had her hands and arms intentionally stretched out in a 'cross like position' blocking plaintiff and his mother path at exiting the ER..

18). TOTALLY SHOCKED AND FEARFUL! Plaintiff Stokes stood there abit frozen in time. Defendant Jane Doe was once more yelling at plaintiff saying, "you do run this hospital, how dare you try and disrespect me! YOUR NOT GOING NO WHERE!YOUR SONAVA B#*@#!!"Plaintiff did notice too that Jane Doe 'eyes' were blood shout red. Plaintiff Stokes responded to defendant Jane Doe, "What really are your problem with us and why are you standing in our way?" "can you please move out of me and my mothers' way?" Defendant Jane do was just ignoring plaintiff request asking her to move more than once.

19). Plaintiff seeing that defendant Jane Doe action at this point was a complete departure from acceptable standards of medical care from an emergency room physician. Plaintiff Stokes proceeded to once again leave the hospital ER embracing his mother in his arms whom was really frieghten at this time. Plaintiff mother was holding on to him very, very tight. Jane Does was [s]till physically blocking plaintiff and his mother's path from leaving the ER area "safely".*

20). More strangely now at this time plaintiff happen to 'notice' out of the blue several police officers happen to had been now headed toward entering the emergency room door at the same time; he and his mother was trying to exit the ER.

---

*) It should be noted, that while Jane Doe was blocking plaintiff and his mothers' path from exiting the ER none of the other medical staff members present done nothing too intervene on plaintiff behalf and stop Jane Doe, nurse.

21). Plaintiff Stokes was now being approached by one of the approaching Auburn Police Officers. Plaintiff did not get this officer name. This approaching officer John Doe asked plaintiff Stokes, "what was going on?" Plaintiff responded, "he was not doing any wrong and was only trying to safely take his mother home." Plaintiff also expressed to this defendant John Doe that Jane Doe nurse, "was acting crazy trying to prevent him and his mother from being properly discharged from the hospital ER, which was being done for no sound reason at all!" This defendant John Doe; then spoke sternly to plaintiff saying, "what do you mean she is acting crazy?!" All the while this defendant was staring at plaintiff in a VERY INTIMIDATING manner. Plaintiff at this moment feeling totally uncomfortable as to just how the rest of the police officer(s) that were there whom were surrounding him and his mother. Within this same moment of time while plaintiff was attempting to avoid this John Doe defendant's mean stare at him. Plaintiff then guided his mother out the way of the [en]circling of the rest of the defendants who was surrounding them.

22). Next, plaintiff turned to speak with another defendant John Doe who had posed a good proposition surrounding the situation in the ER. Defendant John Doe had said, " hey lets give him and his mother a ride home!" Bare in mind, plaintiff had had his back turned too at least three of the other defendants; when he turned to face the defendant who was offering an suggestion to ride he and his mother a ride home.

23). At that moment without provocation or any threating manner or words said on plaintiff Stokes part. Defendant Nathen Gage forcefully 'bear hugged' plaintiff from behind and then tackled him to the floor. Plaintiff was taken face down ward to the floor. Defendant Gage entire  weight had land on plaintiff which sent shock waves through his body. Plaintiff landed chest, head and kneck first on the floor. Plaintiff Stokes did experience an immediate 'hot' serve, excruciating 'pain' which ran down from his spinal area* When defendant Gage assaulted plaintiff tackling him from behind; the other four defendants and defendant John Doe nurse each participated in the assault and excessive force against plaintiff Stokes as follows:

a). John Doe One was pressing down on plaintiff's left arm and had his left arm 'bent' upward in a chicken wing position. Plaintiff was certainly screaming and hollaring out in pain telling the defendants to STOP and too get OFF HIM! John Doe One had said, "we're going to make you cry but this time in front of your mother." Plaintiff was in too much pain to even respond;

b). Defendant John Doe nurse participated in assaulting against plaintiff Stokes; when he was directly holding plaintiff on the floor. Whereby, he forcefully pressed plaintiff's

---

*) When the defendants were assaulting plaintiff his mother was screaming histerically for them to stop!!

left arm on to the floor at the same time defendant John Doe grabbing and holding plaintiff Stokes's left arm on the floor forcefully. Defendant John Doe nurse was telling plaintiff to 'shut up and stop screaming'!;

c). Defendant Gage was pressing his entire weight on plaintiff with extreme force penning plaintiff to the floor face down. Defendant Gage also would further have his knee heavily on plaintiff's left leg, which caused plaintiff much pain and numbness to the left side of his body. This pain and numbness caused plaintiff trouble walking on his own. Because plaintiff's left leg had went numb between [2] to [3] hours. While forcefully penning plaintiff to the floor. Defendant Gage did also employ the aid of defendant John Doe#2 to assist him at putting hand cuffs tightly on both of plaintiff's wrist which did later lead to plaintiff 's hands, fingers and wrists to being swollen and numb for [2] to [3] hours;

d). Now, defendant John Doe#1 action during the assault against plaintiff Stokes consisted of him participating at forcefully penning plaintiff down on the floor. This defenadnt John Doe#1 did forcefully grab plaintiff by also forcefully putting his hands on plaintiff's back and then giving plaintiff Stokes two to three hard 'knee strikes' to the left side of plaintiff's rib cage. Aftherward, he held plaintiff Stokes down on the floor of the ER with the rest of the defendants;

e). Now, the defendant John Doe#2 action during the assault and use of force against plaintiff consisted of him applying an extreme grip holding and grabbing plaintiff's right arm in an upward position behind his back then forcefully aided defendant Gage to put the hand cuffs tightly on plaintiff behind his back whic was tightly pressing into his skin;

f). Now, the defendant John Doe#3 action during the assault and use of force against plaintiff consisted of him applying an tight grip holding and grabbing both of plaintiff's legs which was done in order to aid and abet defendant Gage to "ZIP tie" both of plaintiff's legs. This was done by both defendants in a very excruciating manner Irregardless of the pain and suffering they had already and were causing plaintiff.

24). Plaintiff Stokes further states that although he has not at present identifed three of the John Doe Auburn Police Officers and two of the John Doe and Jane Doe Auburn Community Hospital paramedics. Plaintiff does points out that he can for certain personally ID each of the John Doe and one Jane Doe defendants in person or via photo.

25). As plaintiff was prone face down on the floor after the defendants violently seized him by grabbing the plaintiff and with force vertically 'hoisted' plaintiff from off the floor. As the defendants were taking the plaintiff to their squad car out front of the

Page 21 of 21

hospital. Plaintiff feet were dragging on the ground. Then plaintiff Stokes did reach back door of the squad car. Defendant Gage slammed plaintiff face up against the side of the squad car. Next, with the assistance of the other defendants. They painfully grabbed the plaintiff holding him then vertically lifted him off his feet and horizontally trown in the back seat of the squad car head first. Plaintiff did [re]main face down in the back seat of the squad car for the entire ride the police station.

26). The two defendants that transported plaintiff to the Auburn Police Department. Plaintiff could not see their face because at the time while he was being transported to the station house in the squad car he was immobile face down in the back seat for the entire ride to the police station. These two John Doe defendants that were transporting the plaintiff to the station house. The two then began to "taunt" plaintiff about the 2009 incident whereby plaintiff Stokes had been assaulted by several Auburn Police Officers some of whom we're on and off duty at that time. They were scream out at plaintiff that, "YOU SHOULD'VE LEARNED FROM THE LAST TIME WE F#*% - UP!! NOW, LOOK AT YOUR BLACK A#* PUNK!! YOUR NOT SO TUFF NOW ANYMORE, HUH!!" Although, plaintiff coulhd not see the officers face whom were transporting plaintiff to the station house he was able to hear them taunting him.

27). When they reached the Auburn Police Department . They took plaintiff through the back of the station house entrance near Arterial highway. Bothe John doe defendants one on each side of plaintiff. One grabbed plaintiff's left arm the other grabbed plaintiff by his right arm. They pulled him from the back seat of the squad car. Then while his body was in a downward angle position. They crried plaintiff inside the station house at the same time his feet were dragging along the ground.

28). Once inside the station house the station house. Plaintiff was taken out of cuffs. The defendant John Doe then placed one of plaintiff cuffed wrist to the side of a wood bench while plaintiff was leaning up against the wall in pain. One of the John Doe defendants proceeded to cut the zip ties from plaintiff's feet. Plaintiff Stokes at this very moment was in pain, exhausted, dizzy and needed to see a doctor.

29). Plaintiff did take notice that there was a lot of officers in the station house at the time of his arrival. Some of whom were staring plaintiff down and mean mugging him. The two John Doe defendants after securing plaintiff to the wooden bench left plaintiff there and went off into another area of the precinct. These other officers seems like they were mysterously aware of plaintiff arrival at the station house. Noteworthy, is that

some of the officers that were present there in the station house were 'tauting' and say-ing all kinds of sarcastic remarks to him.  These officers were also taunting plaintiff about the (2009) incident whereby plaintiff were assault by Auburn Police Department officers.  Equally of improtance, is that Defendant Lietenant Mattew Androsko was in the presence of the officers that were there taunting and poking sarcasism at plaintiff. Defendant Androsko  done nothing to stop his "subordinate officers" from taunting plaintiff. In fact, defendant Androsko was also making taunting remarks to plaintiff. At one point while on the bench in pain  defendant Androsko said to plaintiff, "the last time we had you crying before we put you in the ambulance the same way your crying now" He was also smerking at plaintiff while saying this remark.

30). At the time defendant Anrdosko made such remarks to plaintiff did notice that, Police Officer defendant Gage had been the area. Defendant Gage  then added on when he said, "and your son didn't cry as much as you did." Plaintiff Stokes did notice too that both de-fendants Androsko and Gage were in collusion with each other making side remarks toward plaintiff. Anyway, while still on the wooden bench in excruciating pain. Plaintiff did be-gin to yell out, "he needed a doctor now." Plaintiff was eventually told by a station house officer that they were calling him EMT . Plaintiff had needed urgent medical attention. Thus, the "pedigree" information that was being taken from plaintiff was put on hold.

31). Moment later some EMT workers had arrived at the Auburn Polce Department to check on plaintiff well being.  The EMT workers question plaintiff and assisted him from the wooden bench on to the strecther. Plaintiff was transported to the Auburn Community Hospital. When plaintiff reached the hospital. He was taken to the exact sme emergency room to be seen by medical staff. Plaintiff was certainly nervous about being taken back to the same hos-ital where he had been assaulted and excessive force used against him. Plaintiff had alerted the medical staff that were providing him medical assistance that he had been injuried at this hospital. They told plaintiff that they had been told of just how he was injuried there at the hospital.

32). Staff had began to treat plaintiff Stokes for his injuries and examining him. Plain-tiff Stokes had went through medical treatment and testing for more than an hour. Plain-tiff did complain to medical staff that he was experiencing pain and dizziness. He told them that his fingers, hands, wrist, back, kneck and spinal area , were each causing  him

Page 23 of 23

server pain all over his body. The swelling and the numbness plaintiff Stokes was experien-cing was equally causing him server discomfort. Plaintiff felt from the very beginning while being treated at the hospital that he was not being handled or treated correctly. Plaintiff Stokes was really getting a sense and feel and a view from how the paramedics were not fully addressing his needs that they were being indifferent towards his injuries and treating his "pain: in the following manner:

a) they deliberately failed to take pictures of plaintiff injuries, b) they never admini-stered plaintiff an ice pack for his injuries, c) they were very rude to plaintiff in a manner as though he was not a victum, d) never provided plaintiff with any medical equipment to properly elavate his left leg or treat him for his swelling and numbness, e) they did not provide plaintiff with any ace bandages either f) plaintiff was not pro-vided no kneck brace in order to manage plaintiff pain in his kneck, stiffness and swelling, g) plaintiff was also not provided a walking kane by medical staff prior to him being discharged, h) nor did they provide plaintiff with a leg brace for his left leg which was painning plaintiff, i) the medical staff there further failed to have defendant Gage and defendant Seaman escorted from the hospital away from plaintiff and stop threating, intimidating with physical and or bodily harm during the course of plaintiff receiving his medical treatment.

Later plaintiff did have to go to the bath room while he was resting in the hospital bed. Plaintiff Stokes did manage on his own to make his way to the bath room . When in route to the bath room defenadnt Gage and defendant John Doe[1] deliberately and directly obstruct plaintiff path while he was in route to the bath room. Both defendants Gage and Seaman blurted out to plaintiff that, "don't make this bigger than what it is and you wont be able to walk away from the next one.!" Plaintiff responded please just get out my way i'm just trying to make it to the bath room.

33). After plaintiff Stokes came from the labortory safely without incident between the de-fendant Gage, John Doe[1]. At the same time plaintiff did [re]port to the doctor that was treating him; that defendant Gage and John Doe[1] was in the hospital threating him and trying to intimidate him. Additionally, plaintiff reported to this doctor tbat he feared for his life and safety. Plaintiff told this doctor that, the defendants Gage and John Doe[1] were there threating him and yelling at plaintiff that he was coming with them and that he was under arrest. When in fact, plaintiff broken no laws and was not under arrest. Also, when plaintiff reported this to the doctor he was in the process of being discharged from the hospital. Moments later plaintiff did notice the doctor speaking to the defendants but was

not exactly in 'ear shot' to hear what he said to them.

34). Just before plaintiff Stokes was about to be fully discharged from the Auburn Community Hospital. Plaintiff did take note to himself that, he did not see either defendant Gage, John Doe lerking or standing around in the ER area. However, once plaintiff Stokes began to make his way out of the ER entrance, and while also managing himself to walk down the hospital open walk way headed towards the side walk which was in front of him. Thus, while he was walking onwards; he did happen to notice from a quick glance towards plaintiff left. He happen to notice that there two Auburn Police Department squad cars park out front of the hospital. In fear of his life plaintiff was trying to manage hisself down the side walk which was on a descending like slope which led directly to the side walk leading to the streets that was also directly in front of the hospital.

35). As plaintiff Stokes was continuing his decent slowly walking towards the side walk trying to make it home safely. In fear he saw that, the two Auburn Police Department squad cars were slowly driving right along side of plaintiff. Plaintiff had the two squad cars were on a descending of the hospital drive way headed toward the side walk. In gripping fear, plaintiff he was just painfully trying to steady his pace without making any real eye contacts with the officers that were riding along side of him in their squad car and uttering obcenities at him. Once again, they were taunting plaintiff and yelling out the out the squad car at him; words to the affect, "what you want to do now Mr. TUFF GUY!?"

36). Then within the moment of what seemed like [e]ternity; plaintiff Stokes had 'finally' reached the corner of: Nelson and Lansing Streets. Plaintiff was confronted by the site of two more Auburn Police Department Officers in two squad cars and their occupants. At this time there were a total of four squad cars. Plaintiff belive they were doing this to further threaten and intimidate him. Plaintiff does recalls as best; he can recollect. He saw between (5) to (6) officers standing out side of their squad cars. They had been waiving plaintiff's 'handkerchief' he had had for his mother to use when he came to pick her up from the hospital. They were saying to plaintiff, "COME and GET this (i.e., his handkerchief), YOU FAKE TUFF GUY, YOU PUNK, AND YOU AINT NO BOXER NOW ARE YOU!"

37). Pray to GOD within hisself, and in fear of his life plaintiff was able to manage too make it across the streets without any further incident with the defendants or officers all whom were from the Auburn Police Department. Plaintiff made it home which also seemed like eternity.

38). Consequently, after plaintiff stokes made it home safe. He later learned that his mother: (Susan Johnson) was later provided the proper "Accessable Transportation' for trip back home by Auburn Community Hospital. Henceforth, it is well know and documented that plaintiffStokes mother has a history of 'seizure', 'dementia' and other medical problems which is also medically documented. From the very inception of plaintiff Stokes being assaulted and excessive force used against his person right before his mother eyes who looked on in HORROR, screaming and yelling histerically.

39). At no time during this incident did plaintiff Stokes use any force against the defendant officers or against defendant's Jane Doe and John Doe nurse or do anything that would have provided the officers with a legal basis to use force against him. Plaintiff Stokes was simply trying to get his mother home safely from the Auburn Community Hospital's ER during COVID-19.

## CAUSES OF ACTION

### COUNT I

Plaintiff Stokes v. Defendants Gage, One, Two, Three and Four

Federal Constitutional claims

40). The actions of defendants : Gage, One, Two, Three and Four violated plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful seizure, unlawful arrest, the unlawful use of excessive force because of:

a). There was no legal cause to justify the [un]lawful stop, seizure, arrest, detention, and/or the institution of charges against plaintiff Stokes;

b). There was no legal cause to justify the use of force against plaintiff, and the force used against plaintiff Stokes was unreasonable and excessive;

c). At all times relevant to this complaint, the conduct of defendants  One, Gage, three, four, and Two were in willful, reckless, and callous disregard of plaintiff's Stokes right under federal and state law;

d). As adirect and proximate result of the conduct of all defendants, plaintiff Stokes suffered and continues to suffer physical and psychological harm, pain, and suffering, some or all of which may well be permanent, and finacial loses.

COUNT  II

Plaintiff Stokes  v. Defendants Gage, One, Two, Three and Four

Federal and State Constitutional claims

41). The actions of defendants: One, Two, Three, Four and Gage; violated plaintiff's rights under the Fourth  and Fourteenth  Amendments to the United States Constitution to be free from assault, and battery  wherein:

a). There was legal justifiable cause for the assault and battery against plaintiff Stokes, and the assault and battery against plaintiff was unreasonable;

b). There also was no legal cause to justify the use of "force" to assault and batter plaintiff Stokes and that such force was unreasonable;

c). At all times relevant to this complaint, actions of defendants Seaman, Gage, three four and five too assault and batter plaintiff were in willful, reckless, and callous disregard of plaintiff's rights under federal and state law

d). As a direct and proximate result of the conduct of all defendants, plaintiff Stokes suffered and continues to suffer physical and psychological harm, pain, and suf= fering, some or all of which may well be permanent, and finacial loses.

COUNT  III

Plaintiff Stokes  v.  Defendants  Lt. Androsko Matthew, Gage, Two and Three

Federal and State Constitutional claims

42). The actions of defendants Matthew, Two, Three and Gage did violate plaintiff Stokes rights under the Fourth and Fourteenth Amendments to the United States Constitution which constitute the torts of false arrest, false imprisonment and malicious prosecution under federal and state laws in the areas of:

a). Plaintiff Stokes did ask defendant Gage who had tackled him from behind: "'what do you'll want from me?'"Defendant Gage responded: "we had orders to bring you in!" These defendants never asked plaintiff to show any identification either;

b). Defendants Matthew, Two, Three, Gage  and John Doe Assistant District Attorney did issue and/or initiated a criminal complaint against plaintiff Stokes "falsely" and "maliciously" claiming that plaintiff Stokes had been harassing defendant Jane Doe nurse so listed herein at the time of the incident and that plaintiff resisted arrest, thus

these defendants so named herein instituted said prosecution of plaintiff Stokes, which did cause plaintiff Stokes additional harm.

43). As a result of the false charges and malicious prosecution, plaintiff Stokes was required to meet with an court appointed criminal defense counsel and too answer trumped up criminal  charges.  Plaintiff had to appear in Court on at least two or occassions. However, after plaintiff had been [dis]charged from  the Auburn Community Hospital Center; he remained free but was required to appear back in Court too answer false charges.

44). On September of 2021, the charges against plaintiff was dismissed by the prosecution's motion, and the criminal were terminated favorable for plaintiff.

45). At no time did plaintiff commit any offense in violation of the laws of the City of Auburn, Cayuga County, of the United States.

## COUNT  IV

### Plaintiff Stokes    V. Defendants Gage, One, Two, Three  and  Four

### Federal  and  State  Constitutional  Claims

46). [A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence, a police therefore can be held liable for his or her failure to intervene should he or she observes the use of excessive force and has sufficient time  to act but took no steps to intercede and stop it.

47). Defendants One, Two, Three, and Four knew or should have known that plaintiff Stokes did face a specific and immediate  risk of physical harm from defendant Gage and these defendants' One, Two, Three and Four John Does knew or should have known that they each had had a duty to intervene and/or address the risk of harm to plaintiff Stokes, but, knowing that their failure to intervene and act posed an unreasonable risk of physical harm to plaintiff Stokes. Because defendant Gage had had it out to defintely bring plaintiff in. Defendant's One, Two, Three and Four had all arrived at the hospital the same time as defendant Ggage. Therefore, they had had sufficient time to intercede on plaintiff Stokes 's behalf and get officer Gage off plaintiff after tackling plaintiff to the ground. Instead, these  defendants Jon Does: One, Two, Three, and Four in the assaulting and use of excessive force employed directly by defendant Gage against plaintiff, their failure to in-

Page  28  of  28

tervene thus, each defendant have acted in direct disregard of the risk to plaintiff's safety.

48). The actions of the defendants: One, Two, Three, Four and Gage constitute a violation of plaintiff Stokes's constitutional rights because each defendant are liable for their direct failure to intervene to prevent said harm from occurring to plaintiff under federal and state laws.

COUNT  V

Plaintiff Stokes  v.  Defendants Chief James Slayton, Deputy Roger Anthony and
Lieutenant Matthew Androsko.

Federal and state Constitutional claims

49). Here, plaintiff Stokes does further alleges a § 1983 municipality claim against the: Cayuga County, City of Auburn, Chief James Slayton, Deputy Roger Anthony and Lieutenant Matthew. Plaintiff Stokes does also state that the alleged [mis]conduct of these 'superiors' so named above subordinates: Police officer defendant's Gage, One, Two, Three and Four "was directly and proximately caused by de facto policies, practices, and/or customs devised, implemented, enforced, encouraged and sanctioned by" the County and said superiors named herein. Moreover, plaintiff is presently pressing onward and forward at demonstrating that the defendants deliberate actions as described herein by plaintiff Stokes marks starke evidence at establishing municipal liablity under 42 U.S.C. § 1983, [a]11 which led to a 'volly' and/or 'series' of the deprivation by these defendants so each named and/or listed herein of plaintiff Stokes's constitutional rights which were caused by a governmental custom, policy or usage of the municipality in the following regards:

a ). It all started when plaintiff Stokes was at the tender age of '24' years old. And, was arrested on trumped up drug charges in 1993. But, was later acquitted and cleared of all said charges March 11, 1994, in the City of Auburn, Cayuga County. All while plaintiff Stokes was a "rising" boxing star on the international boxing circuit. Plaintiff had went to trial strenly protesting his innocence. He was cleared of all wrong doing. Thus, began a long intense journey of retaliation and/or retalitory acts and conduct committed against him  the Auburn Police Department officer(s) continuously;

b ). These defendants have dogged plaintiff Stokes trail by having an intense propensity at either being quick at targeting and racial profiling plaintiff as well using

"trumped - up" criminal charges against plaintiff Stokes which was always a direct ploy to merely get their hands on plaintiff Stokes physically in order to falsely arrest him, assault him, batter him, use excessive force against him, and malicious prosecute him, for trumped up charges which has been an [o]n going process spanding several years. These defendants so named and/or John or Jane Doe are responsible for there afterwards using the charges of 'Harassment' and 'Resisting arrest' as a means of an [m]andatory [pre]text to use as a way and means to either assault, batter, harm, use excessive force or arrest of plaintiff, which has over the years has encouraged, tolorated, ratified, and has been deliberately indifferent to follow policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

c). Legal cause to stop, detain, arrest, and criminally charge plaintiff Stokes for [pre]texted 'Harassment and Resisting arrest' charges dated: 1994 - plead out in 9/0/1994; 1996 plaintiff was in a physical altercation with officers/ plead out 5/19/1996; in 2009 also had a physical altercation with officers premised upon again a false pretext which did result in plaintiff being acquitted in 2010; in 3/13/2011, charged as usual with the ploy of Harassment and resisting arrest which was dismissed on 6/14/2012; then again charged with Harassment and Resisting arrest and now pending dismissal;

d). The use of force by the Auburn police officers;

e). The proper exercise of police powers, including but not limited to the making of an arrest, the use of force, and the bring of criminal charges;

f). The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

g). The defendant's named herein and/or apart hereof: officers of the law use of their status as law enforcement officers to employ the use of force, assault, false arrest, maliciou prosecution or to achieve ends not reasonably related to their [d]uties;

h). The failure of said law enforement officers and/or police officers to follow established policies, procedures, directives, and instructions regarding arrests, the use of force, and the institution of criminal charges under such circumstances as presented by this case;

i). The failure to properly sanction or discipline law enforcement officers and/or officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by Cayuga County, City of Auburn, Auburn Police officers with the intention of

precluding such individuals instituting civil claims.

COUNT VI

Plaintiffs Susan C. Johnson, Stokes   V. Defendants Jane Doe and John Doe nurses

Federal and State Constitutional claims - Violation of Eighth Amendment

50). Defendants Jane Doe and John Doe nurse were deliberately indifferent to first Plaintiff Susan C. Johnson serious medical needs and thereby violated plaintiff's Susan C. johnson rights to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or plaintiff Susan C. Johnson's right to due process of the law also under the Fourteenth Amendment to the United States Constitution, plaintiff 's Susan C. Johnson damages and the conduct of the individual defendants were directly and proximate caused of the actions and/or inactions of defendants Jane Doe and John Doe which have , with deliberate indifference:

a). Failed to establish and/or follow policies, practices, and procedures to [en]sure that plaintiff Suasn C. Johnson received appropriate care for her serious illness and, if neccessary, outside [transportation] medical services from Auburn Community Hospital defendants so named and/or employed therein; which was negligently not done;

b). Failed to ensure through training, supervision and discipline that said medical staff at Auburn Community Hospital said Jane Doe and John Doe defendants and/or said employees therein, in necessary circumstances, make or made a referral for outside medical [transportation] services, which was not done negligently;

FAILURE  TO INTERVENE

c). Thus, plaintiff Susan C. Johnson and plaintiff Stokes avers, with all due respect, that, [A]ll officials have an affirmative duty to intervene to protect the constitutional rights of its citizens from infringement by officials in their personal presence. Be they state officials or law enforcement officials. Here, defendant Jane Doe can be held directly liable for [h]er direct failure for not intervening on plaintiff's Susan C. Johnson behalf. When she witness her co-worker John Doe nurse particpate in assaulting, battering and using excessive force aginst plaintiff Stokes with the other John Doe Officers defendants and defendant Gage which she Jane Doe nurse [in]stigated from the very beginning.

Defendant Jnae Doe murse did deliberately place plaintiff Stokes and plaintiff Susan C. Johnson lives in harms way from Jane Doe yelling and screaming at plaintiff Stokes in front of his (mother) plaintiff Susan C. Johnson for no justifiable reason. Plaintiff Stokes also points out that: John Doe did not show up in the ER until after Jane Doe nurse "KAREN" had already been ranting and raving at plaintiff Stokes in the presence of his 'sickly' mother for no sound reason. Yet, John Doe nurse did absolutely nothing to 'clam' Jane Doe nurse down. Even after he had had plenty of time to do so! Definitely, long before Jnae Doe had called and/or some one called the police to the ER area.

When all plaintiff Stokes was attempting to do was just peacefully take his (mother); the plaintiff Susan C. Johnson safely home after she was being 'kicked' out of the Auburn Community Hospital. When in fact, Jane Doe nurse was actually 'kicking' plaintiff Susan C. - Johnson from the ER. When she had arrived to the hospital from having a 'seizure'. Noteworhty, Jane Doe nurse had phoned plaintiff Stokes on more than one time that he had to pick his mother up from the hospital. Because accrding to Jane Doe; the bed space was needed. Defendant John Doe really had "suffient time" to [in]tercede on the plaintiff(s) behalf and advise the defendant Jane Doe nurse to clam down! He could have defused the defendant Jane Doe's obnoxious behavior directed at the plaintiff(s). Instead, defendant John Doe nurse part took in the assault, battery, and use of excessive force against plaintiff right before his histerical (mother) plaintiff Susan C. Johnson. Had either defendant Jane Doe nurse or John Doe nurse promptly [in]tercede or [in]tervene on the plaintiff Stokes and plaintiff Susan C. Johnson behalf prior to the Auburn police officers coming into the ER. Then plaintiff Stokes would not have been harmed and plaintiff Susan C. Johnson would have been properly provided with 'adequate' medical treatment and medical [transportational] services. Thus, the defendants so listed and indicated herein above would not have had the opportunity to harm or injure plaintiff Stokes or plaintiff Susan C. Johnson.

### COUNT VII

Plaintiff(s) Suasn C. Johnson, Stokes V. Defendants Jane Doe and John Doe Nurses
Federal and State Constitutional Claims
Infiction of Emotional Distress

51). Defendants Jane Doe and John Doe nurse had a direct and/or strict [d]uty to comply with general accepted medical standards of care in their treatment of both plaintiff each Susan C. Johnson as a 'patient' and plaintiff Stokes as a 'by stander'. Plaintiff Stokes

has now further pleaded negligent infliction of emotional distress under this count and under New York law. Plaintiff Stokes does avers also on behalf of his (mother) plaintiff Susan C. Johnson. They have established [re]covery from being [in]flicted with emotional distress as a result of the defendants Jane Doe and John Doe nurses' willful, reckless, and callous disregard of plaintiff(s) rights made defendants Jane Doe and John Doe liable because: (1) they both breached a duty owed both plaintiff Stokes and plaintiff Susan C. Johnson with respect to being provided proper medical treatment and medical [transportation] services; (2) both plaintiffs received and/or experienced a direct emotional harm physical and mentally; (3) both plaintiffs here did also experience a equally direct casual connection between said emotional harm and distress described herein; (4) these set of [re]lated circumstances highilighted here does provides guaranteed acts of genuiness of harm, because these defendants created these set of circumstances od an: "hostal atmosphere and then by calling the defendants officers to the ER unit. Then enticing these same defendants officers to attackethe plaintiff Stokes right before his histerical mother plaintiff Susan C. Johnson. When in fact, plaintiff Stokes was doing nothing wrong nor breaking any laws.

Thus, both defendants so named and the Auburn Community Hospital had a direct responsibility [n]ot to breach there dutycnot too harm plaintiff Susan C. Johnson and plaintiff Stokes. Their denying plaintiff Susan C. Johnson proper medical treatment and proper medical [transportation] services back home. Such denial directly [led] too plaintiff Stokes being physically harmed. These negligent duties by the defendants did [un]reasonably endangered both plaintiffs lives and physical safety, and, they were jointly and severally responsible for the harm caused plaintiff(s).

### COUNT VIII

Plaintiff Susan C. Johnson, plaintiff Stokes V. Defendants Jane Doe and John Doe nurse

### State Law Negligence  Claims

52). Defendants Jane Doe and John Doe had a duty to comply with generally accepted medical standards of care in their medical treatment of plaintiff Susan C. Johnson: a patient and plaintiff Stokes a proxy to his mother Susan C. Johnson and by stander.

53). Defendant Jane Doe and defendant John Doe nurse and/or paramedics violated their duty of care and concerns to both plaintiff(s).

54). These two defendants did violate their direct udty of care to plaintiff Susan C. Johnson and plaintiff Stokes. They were a direct proximate cause and substantial factor in bringing about both plaintiff's damages as outlined above, and herein through out, as a result, these defendants are liable to both plaintiffs.

55). Because the defendants each so named and described herein were acting as agents, servants, and/or employees of said defendants' Auburn Community Hospital, thus, the defendant Auburn Community Hospital is equally liable to both plaintiffs on the basis of 'respondeat superior liablility.

COUNT IX

Plaintiff Susan C. Johnson  V. Defendants Jane Doe and John Doe nurse/paramedics
and Auburn Community Hospital
Federal Civil Rights Violations Under 42 U.S.C § 12132, Title II of the ADA and
Section 504 of the Rehabilitation Act

56). Here, plaintiff Stokes pleads on behalf of his disabled mother and also a plaintiff Susan C. Johnson. Plaintiff Stokes is the Administrator and proxy of his mother estate. Plaintiff Stokes mother suffers from serious 'seizure disorders' and 'mental dementia' which is well documented with the Auburn Community Hospital center. On this day in question plaintiff Susan C. Johnson did not [re]fuse any medical treatment or medical services. Plaintiff Stokes further points out that any examination performed by medical staff was not [a]pproriately performed because defendant Jane Doe would not have permitted to deny plaintiff Susan C. Johnson's proper treatment instead of 'kicking' her out of the hospital in we hours of the night especially during COVID-19.

57). Moreover, plaintiff Stokes alleges also that his mother plaintiff Susan C. Johnson is [en]titled under Title II of the American Disability Act, because his mother is: a qualified  individual with a 'mental' and 'physical' disability, and should not have been excluded from participation in or be denied the benefits of services, programs, or activities of a public enity (i.e., Auburn Community Hospital), or be subjected to discrimination by any such enity (i.e., Auburn Community Hospital) and its employees Jane Doe and John Doe nurse and/or paramedics. see, 42 U.S.C § 12132 and Section 504 of the Rehabili-

tation Act. Here too, plaintiff Stokes base his mother plaintiff Susan C. Johnson's Title II of the ADA and Section 504 of the Rehabilitation Act on two of the three theories of liability: disparate treatment (intentional discrimination) and disparate impact, or (failure to make reasonable accommodation).

Defendants' Intentional Discrimination Against Plaintiff Susan C. Johnson

58). Defendants so named above and below, have with intentional discriminate against plaintiff Susan C. Johnson by reasons of her mental and physical [dis]ability, denying her benefits of services, programs, and activities to which she is and [w]as entitled as a person with a mental and physical disability, including but not limited to the rights to be 'free' of intentional discrimination or disparate treatment by virtue of [h]er mental and physical disability, and due process of the law.* The defendants said employees Jane Doe and John Doe did deviate from providing plaintiff Susan C. Johnson proper standards of due medical care; which led to them both intentionally discriminating against her. Plaintiff Susan C. Johnson who is disabled and her son (plaintiff Stokes) were put put within the "zone" of physical danger created by defendant Jane Doe's unreasonable and/or unprofessional behavior projected and directed at plaintiff Ms. Johnson; when defendant Jane Doe intentionally called plaintiff Ms. Johnson's son plaintiff Stokes. This defendant did in a very stobbish manner direct plaintiff Stokes that, he had to come [get] his mother plaintiff Susan C. Johnson from the hospital (i.e., the ER area). Because they allegingly needed her bed. In fact, Jane Doe and John Doe employees were actually 'kicking' plaintiff Susan C. Johnson out of the Auburn Community Hospital center; and that bothe defendants Jane Doe and John Doe acted with ill will or personal anomosity towards plaintiff Susan C. Johnson because of her disability. They each equally acted with deliberate intent to discriminate against plaintiff Ms. Johnson's rights under the ADA. When John Doe nurse permitted Jane Doe nurse to commence [un]safe standard of medical care. When they chose too ('kick') plaintiff Ms. Johnson out of the Auburn Community Hospital center. With an

---

*) Plaintiff Stokes also makes mention that his mother's disabilities does affects [h]er major lifes activities which include but are not limited to, caring for oneslf, performing manual task, walking ect., just to name a few....

'intentional discriminate' disregard for proper medical standards in lght of her disability. Plaintiff Stokes further points out that after his mother was admitt[ed] in the hospital on the night in question for a 'seizure'. The defendants so named herein did intentional discriminate against [h]er when they set in motion to have her kicked out' of the hospital during a state of emergency "COVID-19". She was out right denied the opportunity to benefit from full medical treatment and care from these defendants. Plaintiff Susan C. Johnson is a "qualified" individual with more than one form of disability. As a result, in this area of plaintiff Ms. Johnson's complaint. She did suffer harm in violation of her rights under the laws and Constitution of the United States, 42 U.S.C § and Section 504 of the Rehabilitation Act.

### Defendants' Failure To Make Reasonable Accommodation For Plaintiff Susan C. Johnson Disabilities

59). As so noted here supra, plaintiff Stokes alleges that these defendants so named above and herein that these defendants have directly failed to reasohably accommodate plaintiff Susan C. Johnson who has a mental and physical disability by their failure to accommodate her and her son and proxy; the srvices of accessable: [medical transportation services], for which she was and is entitled as a disabled person under the Acts. Had defendant Jane Doe nurse "stop" for a moment to calm herslf down and better address plaintiff Stokes's mother being able to obtain accessable transportation back home. Had Jane Doe defendant sought to merely make sure that, plaintiff Susan C. Johnson and her son did receive accessable medical transportation services back home from the ER the night in question would have turned out just fine. Hence had defendants' Jane Doe or John Doe nurses/paramedics immediately set-up proper medical accessable transportation services to accommodate the plaintiff Susan C. Johnson and her son safe [re]turn back home. Instead, they chose too intentionally 'kick' plaintiffs. out of the ER into the cold during a state of emergency! These defendants improperly treated plaintiff Ms. Johnson due to her 'seizure disorders' and mental! then shockingly did intentionally deny [h]er services, programs, and/or medical care activities [transportation services] or and was discriminated against by these defendants because of her disabilities.

60). As a result, plaintiff Susan C. Johnson suffered serious harm in violation of her rights under the laws and constitution of the united States, 42 U.S.C § 12132, and Section 504 of the Rehabilitation Act.

### Defendant Auburn Community Hospital Respondeat Superior Liabilityy

61). This defendant in question did also discriminate against plaintiff Susan C. Johnson by reason of {h]er mental and physical disabilities; denied her the benefits as a person with a mental and physical health disabilities, including but not limited to the right to be free of any discriminatory or disparate treatment by virtue of her mental and physical disability, and to due process of the law. The Defendant Cayuga County, City of Auburn, Auburn Community Hospital has failed to comply with the mandates of 42 U.S.C. § 12132, Title II of ADA and Section 504 of Rehabilitation Act in the following areas:

a). The failure to properly train, supervise,and discipline said defendant Jane Doe and John Doe nurse and/or paramedics regarding crisis intervention technique for plaintiff Susan C. Johnson who exhibit the signs and symptoms of mental and physical disabilities;

b). The failure to provide adequate  training and resources for crisis intervention nurses and/or paramedics and others to responde to emergencies which plaintiff Susan C, Johnson had experience on the night and day in question involving said plaintiff with mental and physical disabilities;

c). The failure of Jane Doe and John Doe nurse and/or paramedics failed to follow established policies, procedures, directives and instructions regarding crisis intervention techniques used for individual like plaintiff Susan C, Johnson who is an person with a mental and physical disability, and is documented with said defendants place of employment. Due to defendants' action and inactions, plaintiff did not receive the "timely" treatment required to address such conditions, the defendants action was willful, reckless and intentional.

61). By these action, defendants have deprived plaintiff Susan C. Johnson's of rights secured United States Constitution, 42 U.S.C. § 12132 ex al..

********** ********** ********** **********

## X. REQUESTED RELIEF SOUGHT

WHEREFORE, Plaintiff Stokes and Plaintiff Susan Co Johnson (Collectively, "plaintiffs") respectfully requests:

A). Compensatory damages as to all defendants in the amount of: ($105,000,000 dollars);

B). Punitive damages to each defendants so named and listed herein above in the amount of: ($2,000,000.00 dollars);

C). Such other and further relief as may appear just, proper and appropriate.

Plaintiffs hereby demands a jury trial.

MR. SHANE T. STOKES, SR

Mr. Shane T. Stokes, Plaintiff (prose)
Din# 22r4575

Cape Vincent Correctional Facility

Rte. 12E, PO Bx 739,

Cape Vincent, N.Y.   13618-0599

I, Plaintiff Shane T. Stokes, again so declares under the penalties of perjury that the foregoing are true and correct.

Dated: 4|4|24 .

Mr. Shane T. Stokes, Sr
Plaintiff signature

# EXHIBIT A

## THE LAW FIRM OF FRANK W. MILLER, PLLC

*Attorneys and Counselors at Law*

6575 Kirkville Road
East Syracuse, New York 13057
Telephone: (315) 234-9900
Fax: (315) 234-9908
fmiller@fwmillerlawfirm.com

EXH. A P.6
1.

Frank W. Miller
Charles C. Spagnoli

Giancarlo Facciponte
Thomas J. Murphy

August 30, 2021

Shane Stokes, Sr.
56 Lewis St., Apt. #1
Auburn, NY 13021

Re:    **Shane Stokes, Sr. v. Auburn Police Dept.**

Dear Mr. Stokes:

We are the attorneys for the City of Auburn and represent it in connection with the Notice of Claim that you have recently filed against the City of Auburn. Enclosed for service upon you please find our Second Demand for Examination pursuant to General Municipal Law § 50-h. We intend to conduct your examination in person at the Courthouse in Auburn on the second floor in the Law Library.

If for any reason you are not available to attend this examination, please notify our office promptly.

We look forward to your cooperation in this matter.

Sincerely,

**THE LAW FIRM OF FRANK W. MILLER, PLLC**

s/Frank W. Miller, Esq.

Frank W. Miller

FWM/ko
Enc.

Cc:    Stacey DeForrest, Corporation Counsel, City of Auburn
Chief Shawn Butler, City of Auburn

EXH. A P.G. 2.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF CAYUGA

Shane Stokes, Sr.,

                Claimant,

    v.

City of Auburn Police Department,

                Respondent.

**DEMAND FOR EXAMINATION
PURSUANT TO GENERAL
MUNICIPAL LAW § 50-h**

---

**TO:**   **Shane Stokes, Sr.
56 N. Lewis St., Apt. #1
Auburn, NY 13021**

     **PLEASE TAKE NOTICE**, that pursuant to General Municipal Law § 50-h the testimony upon oral examination of **SHANE STOKES, SR.** will be taken before a notary public who is not an attorney, or an employee of an attorney for any party or prospective party herein, and is not a person who would be disqualified to act as a juror because of interest or because of consanguinity or affinity to any party herein in reference to your Notice of Claim dated February 23, 2021, to be held at the Cayuga County Law Library on Tuesday, August 10, 2021, at 10:00 a.m. with respect to evidence, material and necessary, in the defense of this action.

1

EXH. A P.C
3.

**PLEASE TAKE FURTHER NOTICE**, that application for adjournment should be made at least five (5) days prior to the date set for the examination and no adjournment will be granted except upon written stipulation, filed in the office of the undersigned.

Date: June 3, 2021
      East Syracuse, New York                  Respectfully submitted,

**THE LAW FIRM OF FRANK W. MILLER, PLLC**

By: /s/Frank W. Miller
      **Frank W. Miller, Esq.**
      *Attorneys for the Respondents*
      *Auburn City Police Dept,*
      Office and Post Office Address
      6575 Kirkville Road
      East Syracuse, New York 13057
      Telephone: (315) 234-9900
      Facsimile: (315) 234-9908
      fmiller@fwmillerlawfirm.com

2

## AFFIDAVIT OF SERVICE

EXH.A p.6.
4

State of New York )
County of Cayuga )

The undersigned being duly sworn, deposes and says:

Shane T Stokes Sr.     is not a party to the action, is over
(name of person serving papers)

18 years of age and resides at 56 N Lewis st. Apt1
Auburn NY 13021
(complete address of person serving papers)

That on May 21, 2021     , deponent served the within
(date of service)
Notice of Claim within 90 days of incident
(name of document[s] served)

upon Auburn Police Department     located at
(name of person/corporation served)
46 North St. Auburn NY 13021
(complete address where other party/corporation served)

2021 MAY 21 PM

(Select method of service)

__X__ Personal Service: by delivering a true copy of the aforesaid documents personally; deponent knew said person/corporation so served to be the person/corporation described.

__X__ Service by Mail: by depositing a true copy of the aforesaid documents in a postpaid properly addressed envelope m a post office or official depository under the exclusive care and custody of the United States Postal Service.

Shane T Stokes, Sr
Signature of person serving papers

Shane T Stokes, Sr
Printed Name

Sworn to before me this 21st
day of May 2021

Notary Public

MICHELLE A. BARBER
Notary Public, State of New York
Seneca County No. 01BA 6000892
Commission Expires Dec. 29, 20 21

EXH. A P.6
5.

This form is unofficial and provided primarily for pro se litigants. It should be completed in accordance with the substantive pleading requirements of Court of Claims Act section 11(b).

**State of New York**
**Court of Claims**

Shane T Stokes Sr
56 N Lewis St Apt 1
Auburn NY 13021,

Claimant(s)

v.

**Claim**

Auburn Police Department
46 North St. Auburn NY 13021

Defendant(s)

1. The post office address of the claimant (you) is 56 N Lewis St. Apt 1 Auburn NY 13021.

2. This claim arises from the acts or omissions of the defendant. Details of said acts or omissions are as follows (be specific): Per the letter enclosed here in

3. The place where the act(s) took place is (be specific): Auburn Community Hospital located at 17 Lansing St. Auburn NY 13021

4. This claim accrued on the 23 day of February, 2021 at 2-3am o'clock.

5. Identify the items of damage or injuries claimed to have been sustained:

Physical and emotional duress, hospital bills, loss of wages

6. **(Check appropriate box):**

☒ This Claim is served and filed within **90 days of accrual**.

OR

☒ A **Notice of Intention to File a Claim** was served on May 21, 2021, which was within 90 days of accrual.

OR

☐ This is a claim by a correctional facility inmate to recover damages for injury to or loss of personal property and it is served and filed within **120 days of the exhaustion of claimant's administrative remedies.**

By reason of the foregoing, Claimant was damaged in the amount of $ 1 Million, and Claimant demands judgment against the Defendant(s) for said amount.

Shane T Stokes, SN

_____
Claimant

## VERIFICATION

STATE OF NEW YORK   ) ss:
COUNTY OF Cayuga )

Shane T Stokes, SN , being duly sworn, deposes and says that deponent is the Claimant in the within action; that deponent has read the foregoing Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes it to be true.

Shane T Stokes, SN

Sworn to before me this 21st day
of May , 2021.

_____
Notary Public, State of New York

MICHELLE A. BARBER
Notary Public, State of New York
Seneca County No. 01BA 6000892
Commission Expires Dec. 29, 20 21.

### SERVICE AND FILING INSTRUCTIONS

You must serve a copy of the claim in accordance with Court of Claims Act section 11(a) and you must file the original and two copies, with proof of service, and the filing fee of $50.00 or an application for waiver or reduction of the filing fee, with the Clerk of the Court of Claims.

**FAILURE TO EFFECT PROPER AND TIMELY SERVICE AND FILING MAY RESULT IN DISMISSAL OF YOUR CLAIM**

**New York State Court of Claims**
**Justice Building, P.O. Box 7344**
**Albany, New York 12224**
**(518) 432-3411**

Exh. A p.6
7.

May 21, 2021

Auburn Police Department

46 North St.

Auburn, NY 13021

To Whom It May Concern:

I, Shane T Stokes Sr., am writing this letter to inform you of my intentions to sue for physical and emotional duress, hospital bills and predatorily practices. This is from the incident at Auburn Community Hospital on or about February 23 of 2021 at approximately 2-3am. Your officers escalated a situation that could have been handled by giving this petitioner and mother a ride home when she was being unethically discharged from the hospital, while the hospital was not following discharge policy due to a discriminatory attitude towards my sick mother. Your officers also got violent with me which included slamming my head and body against car and floor even after being told I recently had two spinal surgeries on my neck. Also, while being transported to the Auburn Police Department they were taunting me from an incident from 2009 where officers and off duty officers gang assaulted me. I went to trial for the incident from 2009, were I received major injuries and mental duress due to the negligence from the Auburn Police Department. These officers were showing predatorily practices and being discriminating causing a flood of emotional duress and PTSD triggers. I can be reached at 315-604-0442 or by my personal email Shanestokes102270@icloud.com.

Sincerely,   _Shane T Stokes, Sr_

Shane T Stokes Sr.




# AUBURN CITY COURT

157 Genesee Street, Auburn, NY 13021
Phone: (315) 237-6420 Fax: (315) 237-6421
e-mail: AuburnCityCourt@nycourts.gov

The People of the State of New York

vs.

**Shane T. Stokes Sr**
56 N Lewis St
Apt. 1
Auburn, NY 13021

**Notice to Appear**

Docket Number: **CR-00224-21**

Defendant DOB: **10/22/1970**

Please be advised that the above docketed matter has been rescheduled for **Arraignment.**

The following charges have been filed against you with this court:

| Charge | Charge Weight | Charge Description | No. of Counts | Incident Date |
|---|---|---|---|---|
| PL 205.30 | AM | Resisting Arrest | 1 | 02/23/2021 |
| PL 240.26 01 | V | Harassment-2nd:Physical Cntact | 1 | |
| PL 140.05 | V | Trespass | 1 | |

You are, hereby, directed to personally appear in court as follows:

| | |
|---|---|
| Court Name: | **Auburn City Court** |
| Location: | **157 Genesee Street, Auburn, NY 13021** |
| Date/Time: | **03/29/2021 at 10:30 AM** |
| Part: | **KLG-Criminal** |
| Floor/Room: | **Floor 1st/Room Courtroom** |
| Before Judge: | **Hon. Kristin L. Garland** |
| For the purpose of: | **Arraignment** |

Please be further advised that you have provided the court with the following contact information, and you have indicated the following preference for notification of your next court date:

| | | |
|---|---|---|
| Mailing Address: 56 N Lewis St Apt. 1, Auburn, NY 13021 | | |
| Home Phone: | Cell Phone: | Email Address: |
| Requested method of notification: [] Text Message [] Email Message [] Voice Call/Phone Message [X]Letter/U.S. Mail | | |

**If the judge imposed conditions for your release, such as participation in a supervised release program or electronic monitoring, you must follow each of those conditions which are listed on a separate order. Failure to do so may result in revocation of your release.**

**Your failure to appear in person as indicated above may result in a warrant for your arrest. Any bail posted may be forfeited. You may also be subject to additional penalties under the New York State Penal Law without further notice.**



Exh. A P.G. 9.

## VERIFICATION

Shane T Stokes Sr, being duly sworn, deposes and says:

I am the defendant. I have read the foregoing answer and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true. To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers or the contentions therein are not frivolous as defined in subsection (c) of section 130-1.1 of the Rules of the Chief Administrator (22 NYCRR).

Shane T Stokes Sr [SIGNED]

Shane T Stokes Sr [TYPED]

Sworn to before me this

21st day of May, 2021.

_____
Notary Public

MICHELLE A. BARBER
Notary Public, State of New York
Seneca County No. 01BA6000892
Commission Expires Dec. 29, 20 21

# AFFIDAVIT OF SERVICE

Ex. A. p.c.
10.

State of New York )
County of Cayuga )

The undersigned being duly sworn, deposes and says:

Shane T Stokes Sr.          is not a party to the action, is over
(name of person serving papers)

18 years of age and resides at 56 N Lewis St. Apt 1

Auburn NY 13021
(complete address of person serving papers)

That on May 21, 2021          , deponent served the within
(date of service)

Notice of Claim within 90 days of incident
(name of document[s] served)

upon Auburn Community Hospital          located at
(name of person/corporation served)

17 Lansing St Auburn NY 13021
(complete address where other party/corporation served)

(Select method of service)

_X_ Personal Service: by delivering a true copy of the aforesaid documents personally; deponent knew said person/corporation so served to be the person/corporation described.

_X_ Service by Mail: by depositing a true copy of the aforesaid documents in a postpaid properly addressed envelope m a post office or official depository under the exclusive care and custody of the United States Postal Service.

Shane T Stokes, Sr
Signature of person serving papers

Shane T Stokes, Sr
Printed Name

Sworn to before me this 21st

day of May 2021

Notary Public

MICHELLE A. BARBER
Notary Public, State of New York
Seneca County No. 01BA 6000892
Commission Expires Dec. 29, 20 21

This form is unofficial and provided primarily for pro se litigants. It should be completed in accordance with the substantive pleading requirements of Court of Claims Act section 11(b).

**State of New York**
**Court of Claims**

Shane T Stokes Sr
56 N Lewis St Apt 1,
Auburn NY 13021 ,

Ex h. A PG
11.

Claimant(s)

v.

Auburn Community, Hospital
17 Lansing St. Auburn NY 13021

**Claim**

Defendant(s)

1. The post office address of the claimant (you) is 56 N Lewis St
Apt 1 Auburn NY 13021 .

2. This claim arises from the acts or omissions of the defendant. Details of said acts or omissions are as follows (be specific): Per letter enclosed here in

3. The place where the act(s) took place is (be specific): Auburn Community
Hospital Located at 17 Lansing st. Auburn
NY 13021 .

4. This claim accrued on the 23 day of February, 2021 at 2-3 am o'clock.

5. Identify the items of damage or injuries claimed to have been sustained:

*Physical and emotional duress, hospital bills and loss of wages.*

6. **(Check appropriate box):**

☑ This Claim is served and filed within **90 days of accrual**.
OR

☑ A **Notice of Intention to File a Claim was served** on _____, which was within 90 days of accrual.
OR

☐ This is a claim by a correctional facility inmate to recover damages for injury to or loss of personal property and it is served and filed within **120 days of the exhaustion of claimant's administrative remedies**.

By reason of the foregoing, Claimant was damaged in the amount of $ *1 Million*, and Claimant demands judgment against the Defendant(s) for said amount.

_____
Claimant

## VERIFICATION

STATE OF NEW YORK    ) ss:
COUNTY OF *Cayuga*

_____, being duly sworn, deposes and says that deponent is the Claimant in the within action; that deponent has read the foregoing Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes it to be true.

_____

Sworn to before me this *21st* day
of *May*, *2021*.

_____
Notary Public, State of New York

MICHELLE A. BARBER
Notary Public, State of New York
Seneca County No. 01BA 6000892
Commission Expires Dec. 29, 20 ____

### SERVICE AND FILING INSTRUCTIONS

You must serve a copy of the claim in accordance with Court of Claims Act section 11(a) and you must file the original and two copies, with proof of service, and the filing fee of $50.00 or an application for waiver or reduction of the filing fee, with the Clerk of the Court of Claims.

**FAILURE TO EFFECT PROPER AND TIMELY SERVICE AND FILING MAY RESULT IN DISMISSAL OF YOUR CLAIM**

**New York State Court of Claims**
**Justice Building, P.O. Box 7344**
**Albany, New York 12224**
**(518) 432-3411**



Exh.A p6
13
COPY

UCS-511

# AUBURN CITY COURT

157 Genesee Street, Auburn, NY 13021
Phone: (315) 237-6420  Fax: (315) 237-6421
e-mail: AuburnCityCourt@nycourts.gov

The People of the State of New York

vs.

**Shane T. Stokes Sr**
56 N Lewis St
Apt. 1
Auburn, NY 13021

**Notice to Appear**

Docket Number:    **CR-00224-21**

Defendant DOB:    **10/22/1970**

Please be advised that the above docketed matter has been rescheduled for **Arraignment.**

The following charges have been filed against you with this court:

| Charge | Charge Weight | Charge Description | No. of Counts | Incident Date |
|---|---|---|---|---|
| PL 205.30 | AM | Resisting Arrest | 1 | 02/23/2021 |
| PL 240.26 01 | V | Harassment-2nd:Physical Cntact | 1 | |
| PL 140.05 | V | Trespass | 1 | |

You are, hereby, directed to personally appear in court as follows:

| | |
|---|---|
| Court Name: | **Auburn City Court** |
| Location: | **157 Genesee Street, Auburn, NY 13021** |
| Date/Time: | **03/29/2021 at 10:30 AM** |
| Part: | **KLG-Criminal** |
| Floor/Room: | **Floor 1st/Room Courtroom** |
| Before Judge: | **Hon. Kristin L. Garland** |
| For the purpose of: | **Arraignment** |

Please be further advised that you have provided the court with the following contact information, and you have indicated the following preference for notification of your next court date:

| | | |
|---|---|---|
| Mailing Address: 56 N Lewis St Apt. 1, Auburn, NY 13021 | | |
| Home Phone: | Cell Phone: | Email Address: |
| Requested method of notification:    [] Text Message    [] Email Message    [] Voice Call/Phone Message    [X] Letter/U.S. Mail | | |

**If the judge imposed conditions for your release, such as participation in a supervised release program or electronic monitoring, you must follow each of those conditions which are listed on a separate order.  Failure to do so may result in revocation of your release.**

**Your failure to appear in person as indicated above may result in a warrant for your arrest. Any bail posted may be forfeited. You may also be subject to additional penalties under the New York State Penal Law without further notice.**

EXh.A.P6
14

May 21, 2021


Dear Ms. DeProspero,

     I am writing you to follow up with the letter I received from you for the incident on February 23, 2021 at the Auburn Community Hospital. I have reached out multiple times and I have not heard back from you. The first time we spoke you stated that a discharge at the time my mother was discharged at that time and situation was improper. Since the hospital called me to come get my mother at 1:00am and they knew I had to walk in the cold to walk her back to my home, which is only a couple blocks away. They were informed multiple times that I had no ride and would have to walk with her, I even called back several times. They nurse I spoke too still insisted I walk to bring her home due to the fact that they needed her bed. My mother is known at the hospital she frequently is there due to her having seizures often and that night the nurse at the hospital made it seem like she was sick of helping my mother. This treatment is completely unethical treatment because the nurse did not do what the policy of the hospitals discharge stated. I then was physically harmed and jumped by the police and a nurse in front of my sick frail mother. I would not have been put in this situation if the nurse had followed the discharge policy by making me come get my mother then refusing to let me walk with her. Please contact me at 315-604-0442 or my personal email is shanestokes102270@icloud.com.


Sincerely,    *Shane T Stokes Sr*


Shane T Stokes Sr

EXh. A p.6.
15.



AUBURN COMMUNITY HOSPITAL

## We Specialize in You

March 29, 2021

Mr. Shane Stokes
56 N. Lewis Street
Auburn, New York 13021

Dear Mr. Stokes,

Thank you for voicing your concerns regarding your recent experience while your mother was a patient in the Emergency Department (ED) at Auburn Community Hospital. We appreciate the opportunity to review this important issue.

Thank you for speaking with me in follow-up. We hope we were further able to address your concerns. Our patients' safety and well being is our primary concern. As discussed, our Director of Care Transitions has secured arrangements for patients in need of transportation home during the overnight hours since your mother's ED visit. We are confident this will mitigate future occurrences such as you experienced.

Our ED Nurse Manager has also reviewed your concern of your encounter with nursing staff.

If you would like to discuss this matter further, please do not hesitate to contact me directly at (315) 255-7166 Monday-Friday between the hours of 7am-4pm.

Sincerely,

Christine DeProspero
Risk Management Specialist

You may appeal to Abby Gunger, RN, BSN, MS, Vice President of Quality Management at (315) 567-0578 if you are not satisfied with this response. The New York State Department of Health requires us to inform you of your right to complain to their central complaint hotline at 1-800-804-5447.

Exh.A P6
15

## VERIFICATION

_Shane T Stokes Sr_, being duly sworn, deposes and says:

I am the defendant. I have read the foregoing answer and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true. To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers or the contentions therein are not frivolous as defined in subsection (c) of section 130-1.1 of the Rules of the Chief Administrator (22 NYCRR).

_Shane Stokes_ [SIGNED]

_Shane T Stokes, Sr._ [TYPED]

Sworn to before me this
21st day of _May_, 200__2021__.

_____
Notary Public

MICHELLE A. BARBER
Notary Public, State of New York
Seneca County No. 01BA 6000892
Commission Expires Dec. 29, 20 21