UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHANE T. STOKES, SR. and SUSAN C. JOHNSON,

                        Plaintiffs,                  5:24-cv-00499 (BKS/ML)

v.

CHIEF JAMES SLAYTON, DEPUTY ROGER ANTHONY, LIEUTENANT MATTHEW ANDROSKO, OFFICER NATHAN GAGE, JOHN DOES #1–4, Auburn City Police Officers, JANE DOE, Auburn Community Hospital Nurse. and JOHN DOE, Auburn Community Hospital Nurse, each in their individual and official capacities,

                        Defendants.

**Appearances:**

*For Plaintiffs:*
Brian M. Dratch
Franzblau, Dratch Law Firm
223 Broadway, Suite 2701
New York, NY 10271

*For Defendants Chief James Slayton, Deputy Roger Anthony, Lieutenant Matthew Androsko, and Officer Nathan Gage:*
Cory John Schoonmaker
Paul V. Mullin
Sugarman Law Firm LLP
211 West Jefferson Street
Syracuse, NY 13202

1

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.   INTRODUCTION**

Plaintiffs Shane Stokes and Susan Johnson bring this action under 42 U.S.C. § 1983 and New York law against Defendants Auburn City Police Department ("ACPD") Chief James Slayton, Deputy Roger Anthony, Lieutenant Matthew Androsko, Officer Nathan Gage, ACPD Officer John Does 1-4, and Auburn Community Hospital nurses Jane Doe and John Doe, all in their individual and official capacities. (Dkt No. 1). The Complaint alleges numerous violations of state and federal law stemming from an incident occurring on February 22 and 23, 2021. (*See id.*). Presently before the Court is Defendants James Slayton, Roger Anthony, Matthew Androsko, and Nathan Gage's (collectively, the "Police Defendants") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 60). Plaintiffs did not file a response.[1] For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

**II.   FACTS**[2]

On February 22, 2021, Plaintiff Stokes received a call around 10:30 p.m. from an unidentified nurse ("Jane Doe nurse") notifying him that his mother, Plaintiff Johnson, was admitted to Auburn Community Hospital. (Dkt. No. 1, ¶ 4). At 1:31 a.m. on February 23, 2021, Stokes received another call informing him Johnson "was being immediately discharged" and he needed to pick her up. (*Id.* ¶ 6). After Stokes arrived, Johnson was brought out in a wheelchair and Stokes began to change Johnson into the clothing he brought her. (*Id.* ¶¶ 9-10). In the

---

[1] Plaintiffs' counsel informed the Courtroom deputy that he would not be responding to the motion to dismiss.
[2] The facts are drawn from the Complaint. (Dkt. No. 1). The Court has only included the facts relevant to the pending motion. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

process, he "tossed" the hospital blanket covering her onto a bench in the emergency room's empty seating area. (*Id.*). Jane Doe nurse "rush[ed] through the doors . . . adjacent to the receptionist['s] booth" and "aggressively" walked up to Stokes yelling "that's not the type of conduct [ ] she [ ] tolerate[s] by [ ] anyone." (*Id.* ¶ 11). A second unidentified nurse ("John Doe nurse") and three other unidentified hospital staff came to investigate. (*Id.* ¶ 12). Stokes explained that "all he was doing was trying to get [Johnson] dress[ed] to go home and that Jane Doe . . . was preventing the two from properly exiting." (*Id.* ¶ 13).

When Stokes finished changing Johnson's clothing and the two "headed toward the ER exit door[,]" Jane Doe nurse "came dashing directly in front of" Plaintiffs and blocked their path. (*Id.* ¶¶ 16-17). Police had arrived, and Stokes told them that he "was only trying to safely take his mother home" but Jane Doe nurse "was acting crazy trying to prevent him and his mother from being properly discharged from the hospital ER[.]" (*Id.* ¶¶ 20-21). Plaintiffs allege that Defendant Nathan Gage tackled Stokes, and that Gage, "four defendants[,] and defendant John Doe nurse each participated in [an] assault" against Stokes. (*See id.* ¶ 23). Stokes sustained multiple injuries while he was pinned, handcuffed, and cable tied. (*See id.*).

Stokes alleges he was dragged and thrown face down into the back of a squad car, and that unidentified officers "taunt[ed] him" about an incident involving Stokes and ACPD in 2009 as they drove him to the police station. (*See id.* ¶¶ 25-27). The taunting continued at the station, where Stokes began to yell that "he needed a doctor now[.]" (*See id.* ¶¶ 28-30). EMTs arrived and transported Stokes back to the hospital. (*Id.* ¶ 31). Stokes "went through medical treatment and testing for more than an hour[,]" while Gage and John Doe One were "threatening him and trying to intimidate him." (*Id.* ¶¶ 32-33). Stokes told his doctor about the threats, and he alleges he "was not under arrest" at that time. (*Id.* ¶ 33). Stokes was then discharged. (*Id.* ¶¶ 33–34).

3

ACPD officers "taunted" Stokes again after he exited the hospital, (*id*. ¶¶ 34-36), but Stokes arrived home "without any further incident[,]" (*id*. ¶ 37).

Defendants Androsko, Gage, and John Does Two and Three "issue[d] and/or initiated a criminal complaint" against Stokes, claiming that he "had been harassing [D]efendant Jane Doe nurse . . . at the time of the incident and that [Stokes] resisted arrest[.]" (*Id.* ¶ 42). Stokes "remained free but was required to appear back in [c]ourt." (*Id.* ¶ 43). In "September of 2021, the charges against [Stokes were] dismissed by the prosecution's motion, and the criminal [sic] were terminated favorable [sic] for [Stokes]." (*Id*. ¶ 44).

## III.   MOTION TO DISMISS

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.[3]

---

[3] The Court notes that, although Plaintiffs are currently represented by counsel, Plaintiffs were proceeding pro se when they filed the Complaint. (*See* Dkt. Nos. 1; 38; 50). In an abundance of caution, the Court reviews the Complaint as it would a pro se submission—that is, Plaintiffs' submissions "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

4

"Plaintiff[s'] failure to respond to the motion to dismiss does not relieve the Court of its obligation to consider the merits of [P]laintiff[s'] claims." *Arena v. Irondequoit Police Dep't*, 228 F. Supp. 3d 242, 243 (W.D.N.Y. 2017). "[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Id.* at 323.

### B. Analysis

Defendants argue that the Complaint should be dismissed because all claims asserted against the Police Defendants "are barred by their respective statutes of limitations." (Dkt. No. 60-1, at 6). Plaintiffs did not file a response.[4]

"[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citation omitted). "Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims." *Smith v. City of New York*, 1 F. Supp. 3d 114, 118 (S.D.N.Y. Nov. 20, 2013). "Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly shows the claim is out of time.'" *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

---

[4] Stokes filed a notice of motion requesting "a hearing before [the Court] make[s] a final decision" so he could "verify" certain statements and actions "of the correction officers/staff for delaying [his] legal process." (Dkt. No. 63, at 3). But even if the Court construes Plaintiffs' notice of motion as a response, Plaintiffs' argument would not impact the Court's statute of limitations analysis, because the motion and the accompanying letter address delays that occurred *after* the Complaint was filed. (*See id.*).

5

1.  **Federal Claims**

Plaintiffs allege that Gage "violated [Stokes's] rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful seizure [and] excessive force" (count I),[5] "violated [Stokes's] rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from assault[] and battery" (count II), that the actions of Androsko and Gage "constitute the torts of false arrest[6] [ ] and malicious prosecution" (count III), and that Gage failed to intervene to protect Stokes' constitutional rights "from infringement by other law enforcement officers in [his] presence" (count IV). (Dkt. No. 1 ¶¶ 40–48). Count V alleges a section 1983 "municipality claim against Cayuga County, City of Auburn," Slayton, Anthony, and Androsko. (*Id.* ¶ 49).

As "[s]ection 1983 does not provide a specific statute of limitations," *Hogan*, 738 F.3d at 517, courts must borrow from "state-law limitations provisions[,]" *Owens v. Okure*, 488 U.S. 235, 239 (1989). "[I]n New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023). Plaintiffs' claims therefore must have accrued within the three years preceding the date that the Complaint was filed, April 10, 2024, to survive dismissal. (*See* Dkt. No. 1, at 1).

"The accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "A Section 1983

---

[5] Plaintiffs' Count I also alleges a claim for "unlawful arrest[.]" (Dkt. No. 1, ¶ 40). However, Plaintiffs separately allege a "false arrest" claim under Count III. (*Id.* at ¶ 42). The Court construes Plaintiffs' "unlawful" and "false" arrest claims as one in the same.

[6] Plaintiffs allege claims for both false arrest and false imprisonment. (Dkt. No. 1, ¶ 42). "Claims brought under Section 1983 are guided by state tort law." *Yanez v. City of New York*, 29 F. Supp. 2d 100, 106 (E.D.N.Y. 1998). "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (citing *Jacques v. Sears, Roebuck & Co.*, 285 N.E.2d 871, 877 (N.Y. 1972)). Therefore, the Court reads the claims together as a single claim for false arrest.

claim does not accrue until the plaintiff 'has a complete and present cause of action.'" *Mallet v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 131 (2d Cir. 2025) (citing *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015)). "The accrual analysis involves two steps." *Id.* First, a court must "identify[ ] the specific constitutional right alleged to have been infringed." *Id.* (quoting *McDonough v. Smith*, 588 U.S. 109, 115 (2019)). Then, the court must determine "when the plaintiff knew or had reason to know of the injury which is the basis of [their] action[.]" *Id.* (internal quotations and citation omitted).

### a. Unlawful Seizure and False Arrest

As a preliminary matter, to the extent Plaintiffs' unlawful seizure claim is premised on Stokes's arrest, it is duplicative of their false arrest claim. *See RDK NY Inc. v. City of N.Y.*, No. 21-cv-01529, 2024 WL 4333704, at *15, 2024 U.S. Dist. LEXIS 176219, at *37 (E.D.N.Y. Sept. 28, 2024). "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal quotations and citation omitted). Accordingly, Plaintiffs' unlawful seizure and unlawful arrest claims are "consolidated into a single claim for false arrest." *See RDK NY Inc.*, 2024 WL 4333704, at *16, 2024 U.S. Dist. LEXIS 176219, at *38; *see also Ivery v. Baldauf*, 284 F. Supp. 3d 426, 434 (W.D.N.Y. 2018) ("Based on the facts alleged, the false-arrest and illegal-seizure claims are properly asserted in a single count, inasmuch as they both arise from the same rights guaranteed by the Fourth Amendment.").

"[A] cause of action for false arrest accrues at the time of detention[.]" *Jefferson v. Kelly*, No. 06-cv-6616, 2008 WL 1840767, at *3, 2008 U.S. Dist. LEXIS 32954, at *9 (E.D.N.Y. Apr. 21, 2008) (quoting *Jaegly v. Couch*, 439 F.2d 149, 154 (2d Cir. 2006)). According to the Complaint, all the events related to Stokes's alleged detention occurred on February 23, 2021.

(*See* Dkt. No. 1, ¶ 6). Because this lawsuit was filed on April 10, 2024, more than three years later, Plaintiffs' false arrest claim is therefore time-barred.

### b. Excessive Force and Assault and Battery

Plaintiffs allege separate claims for excessive force and assault and battery under section 1983. (Dkt. No. 1, at 26-27). However, a claim under section 1983 for assault and battery is more properly construed as an excessive force claim. *See Johnston v. City of Syracuse*, No. 20-cv-1497, 2021 WL 3930703, at *5, 2021 U.S. Dist. LEXIS 166707, at *11 (N.D.N.Y. Sept. 2, 2021) ("A number of courts have held that a § 1983 claim alleging assault and battery is properly construed as an excessive force claim."); *see Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018), *aff'd*, 765 F. App'x 493 (2d Cir. 2019). Therefore, the Court construes Plaintiffs' claim for assault and battery as part of their cause of action for excessive force.

"[A] claim for excessive force accrues when the use of force occurred[.]" *Jefferson*, 2008 WL 1840767, at *3, 2008 U.S. Dist. LEXIS 32954, at *9 (E.D.N.Y. Apr. 21, 2008) (citing *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). As noted above, Plaintiffs allege that every action taken by the Police Defendants, as relevant to Stokes's claims here, occurred on February 23, 2021. (*See* Dkt. No. 1, ¶ 6). Because this lawsuit was filed on April 10, 2024, more than three years later, Plaintiffs' excessive force claim is therefore time-barred.

### c. Failure to Intervene

The statute of limitations for a failure to intervene claim "accrues when the purported failure to intervene occurs." *Watt v. City of New York*, 740 F. Supp. 3d 212, 227 (E.D.N.Y. 2024) (citing *Roundtree v. City of New York*, No. 15-cv-6582, 2018 WL 443751, at *3, 2018 U.S. Dist. LEXIS 6739, at *7 (S.D.N.Y. Jan. 12, 2018)). Plaintiffs allege that the relevant Police

Defendants failed to intervene during the incident on February 23, 2021. (*See* Dkt. No. 1, ¶¶ 46-48). Plaintiffs' failure to intervene claim is therefore time-barred.

### d. Malicious Prosecution

Defendants' do not address Stokes's section 1983 malicious prosecution claim, as they construe Plaintiffs' Count III as alleging only "state law torts[.]" (*See* Dkt. No. 60-1, at 5). But Plaintiffs' Count III clearly asserts that certain Defendants "did violate [Stokes's rights under the Fourth and Fourteenth Amendments[,]" and that their actions "constitute the tort[ ] of . . . malicious prosecution under *federal and* state laws[.]" (*See* Dkt. No. 1, ¶ 42 (emphasis added)). Because Defendants have not moved to dismiss Plaintiffs' section 1983 malicious prosecution claim, the Court has not considered it at this time.[7]

### e. Municipal Liability

Defendants allege that Plaintiffs' *Monell* claim must be dismissed as time-barred. (Dkt. No. 60-1, at 7). Defendants assert that Stokes "alleges a *de facto* policy and custom of making false or 'trumped up' allegations against him specifically, beginning in 1993 and involving numerous charges over the course of several decades, culminating in the events of February 23, 2021." (*Id.* (citing Dkt. No. 38, ¶ 49)). Defendants argue that, "[c]learly, [Stokes] was 'aware' that, or at least believed that, his alleged mistreatment on February 23, 2021, was a result of this alleged de facto policy, as soon as that mistreatment allegedly occurred." (*Id.*).

The statute of limitations for a *Monell* claim, like other section 1983 claims arising in New York, is three years. *See Laboy v. Ontario Cty.*, 318 F. Supp. 3d 582, 587 (W.D.N.Y. 2018).

---

[7] The Court, however, notes that "[i]n malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution terminates in the plaintiff's favor." *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 234 (N.D.N.Y. 2023) (quoting *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017). Plaintiffs allege that, in "September of 2021, the charges against plaintiff w[ere] dismissed by the prosecution's motion, and the criminal [sic] were terminated favorabl[ly] for [Plaintiff]." (Dkt. No. 1, ¶ 44). This action was filed on April 10, 2024—less than three years later.

However, "since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's 'policy or custom,' a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (citing *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978)).

While Plaintiffs describe "a long intense journey of retaliation and/or retalitory [sic] acts and conduct committed against [Stokes]" by the ACPD officers, the alleged "retaliation" against Stokes is not the only allegation tied to Plaintiffs' municipal liability claim. (*See* Dkt. No. 1, ¶ 49). Read liberally, Plaintiffs attempt to allege several municipal policies or customs that caused him harm, including "officers of the law us[ing] their status us law enforcement officers to employ the use of force, assault, false arrest, malicious[s] prosecution or to achieve ends not reasonably related to their duties[,]" and the "failure to properly sanction or discipline law enforcement officers and/or officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by Cayuga County[.]" (*Id.*).[8] The Complaint does not indicate when Plaintiffs became aware, or should have become aware, of any of these alleged policies.

Construing the Complaint "to raise the strongest arguments that [it] suggest[s,]" *see Hogan*, 738 F.3d at 515, and mindful that the Police Defendants bear the "burden of demonstrating, based on the allegations in the complaint, that the claim is untimely[,]" *see Laboy*, 318 F. Supp. 3d at 589, the Court declines to dismiss Plaintiffs' *Monell* claim on statute of limitations grounds. *See also Egan v. Kennedy*, No. 04-CV-6626, 2008 WL 4647740, at *3, 2008

---

[8] The Court notes that, while Plaintiffs allege their municipality claim against, *inter alia,* "Cayuga County" and the "City of Auburn[,]" (Dkt. No. 1, ¶ 49), neither Cayuga County nor the City of Auburn are currently parties to this action, (*see id.* at 2-3 (identifying Defendants' information)).

U.S. Dist. LEXIS 83034, at *9 (W.D.N.Y. Oct. 17, 2008) (declining to dismiss claim against County where it was "not clear that the claim [was] time-barred, since the Complaint d[id] not indicate when [the p]laintiff became aware, or should have become aware, of the alleged county policy to deny representation to indigent defendants").

### 2. State Law Claims

Read liberally, Plaintiffs' Counts II and III allege separate state law claims for assault and battery, false arrest, false imprisonment, and malicious prosecution. Defendants argue that these claims are also time-barred, because "[a]ll of these torts have a one-year statute of limitations under New York Law." (Dkt. No. 60-1, at 8 (citing N.Y. C.P.L.R. § 215(3)).

The Court agrees. *See Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 204 (E.D.N.Y. 1998) ("Section 215(3) of the New York Civil Practice Law and Rules [ ] provides that intentional torts such as assault, battery, false imprisonment, [and] malicious prosecution [ ] are limited by a one-year statute of limitations." (internal quotations omitted)). Under New York state law, a claim "for assault and battery accrue[s] immediately upon the occurrence of the tortious act[,]" *id.*, and claims for false arrest and imprisonment "accrue when the confinement terminates[,]" *Lucas v. Novogratz*, No. 01-cv-5445, 2002 WL 31844913, at *6, 2002 U.S. Dist. LEXIS 24321, at *17 (S.D.N.Y. Dec. 18, 2002) (citation omitted). Stokes alleges he was assaulted on February 23, 2021, and that he "was not under arrest" by the time he was treated by a doctor at the hospital. (Dkt. No. 1, ¶¶ 6, 23, 33). Stokes was allowed to return home after he was discharged from the hospital, (*see id.* ¶¶ 34-38), and he "remained free" while he "was required to appear back in [c]ourt" to address the criminal complaint against him, (*id.* ¶ 43). As such, these state law claims are time-barred because Plaintiffs filed their Complaint more than one year later.

11

"A state law claim for malicious prosecution, like a federal claim, accrues on the date the criminal proceeding in question terminated in [the] plaintiff's favor." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015) (citation omitted). Plaintiffs allege that the charges against Stokes were terminated in his favor in September of 2021. (*See* Dkt. No. 1, ¶ 44). As such, this claim is also barred by the statute of limitations.[9]

Defendants' motion to dismiss Plaintiffs' substantive state law claims is therefore granted.

## IV.   LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend "when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000).

But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021). Here, Plaintiff has not sought leave to amend and there is no indication that leave to amend would be anything but futile because Plaintiffs' claims are barred by the applicable statutes of limitations. Therefore, the Court will not grant Plaintiffs leave to amend. *See Billeris v. Inc. Vill. of Bayville, New York*, 694 F. Supp. 3d 214, 235 (E.D.N.Y. 2023)

---

[9] As Defendants do not address Plaintiffs' state constitutional claims, neither does the Court.

(denying leave to amend where the plaintiff's claims were time-barred and "would still fail even if she could amend her complaint to allege additional facts" to address "merits-based deficiencies").

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 60) is **GRANTED** in part and **DENIED** in part, in accordance with the above; and it is further

**ORDERED** that the motion to dismiss is **DENIED** as to: (1) the malicious prosecution claim under 42 U.S.C. § 1983; and (2) the *Monell* claim, and the motion to dismiss is otherwise **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 25, 2025

Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge